Case No. 19-1935, Hamilton Specialty Insurance Company v. Transition Investment LLC et al. Oral argument is not to exceed 15 minutes per side. Ms. Katz for the appellant. Thank you. Good afternoon, and may it please the Court. My name is Erin Katz, and I'm here representing Hamilton Specialty Insurance Company, the petitioner in this case. Hamilton respectfully asked this Court to reverse the U.S. District Court for the Eastern District of Michigan's decision here for two reasons. First, the policy of insurance is unambiguous and must be enforced as written. And second, transition investment's entry into a consent judgment is a breach of the terms of Hamilton's insurance policy. Your Honors, this case is about a rental property that was rendered unsafe by the landlord's failure to fulfill its obligation and numerous exceptions to the insurance coverage. The inaction of the landlord and the tenant both directly and proximately caused this unfortunate event. However, the insurance policy is clear that such an event is excluded from coverage. When insuring a rental property, Hamilton relied on the landlord's representations regarding the safety of this particular property. The landlord failed to keep the property in a habitable condition or meet other insurability requirements as it previously represented it had, and thus no coverage exists. This Court reviews the District Court's grant or denial of summary judgment de novo. To my first point, the policy language here is clear and unambiguous and must be enforced as written. Courts should not create ambiguity in an insurance policy where the terms of the policy are unambiguous. Appellees may urge this Court to consider the quote-unquote unusual facts of this case to allow coverage, though no ambiguity exists. However, Hamilton asked this Court to strictly construe the terms of the policy as written. It is uncontested that the tenant knew of the defect in the stove that eventually led to the fire in this case. He informed his landlord of said defect, but neither did anything to the fire. The State Court complaint alleges that the stove was negligently maintained or whatever the stove caused the fire. Why didn't that just give rise to a duty to defend on your part right then and there? Well, that did not give rise to a duty to defend based on the exclusion that I'm going to go through here, which includes that the insurance does not apply to the liability or suits arising from tenants or the acts of tenants. And here, the tenant failed to remedy the problem, as was part of his duty under the lease agreement. I mean, the lease agreement provides that he could opt to have the landlord... But if they tender the complaint to you and say, we want coverage, here's the complaint, and it's arguable that we're liable, right? I mean, the standard on a duty to defend is just, are they arguably negligent, essentially? I don't know why that doesn't give rise to a duty to defend. Is there some Michigan principle that I'm missing here? It just seems like a clear duty to defend here. The principle that I know is heavily relied on by appellees is that there is an absolute duty to defend, but the case law states that it's a duty to defend or to deny coverage, as they did here. That's not inappropriate, but of course, the insurance company runs the risk of having to go the route that we had to here, file the declaratory judgment, and make a judicial determination here, as opposed to just the automatic duty to defend. So it's not necessarily improper. It just gives rise to this second litigation here. Ms. Katz, it's just cold. Following up on that line of argument, is it your argument that Hamilton can disclaim duty to defend the moment an insured property owner breaches any local habitability ordinance, no matter how trivial? It just seems that there would be no limiting principle there, I guess. It takes the most trivial, minor habitability ordinance that one can imagine, and the insured violates that. Is it your position Hamilton simply can disclaim the duty to defend in any circumstance of that sort? It would really be dependent on the circumstance, if I'm understanding your question, and if the problem had been remedied before something like this happened. So if we had known that 12 people were staying in the house, as opposed to eight, or if we had known that there was no egress from the second floor window, and those issues, as well as the alternative escape means from the second floor, and one smoke detector in the whole house in the basement, those are not trivial violations. So that's not what we have here, is an insurance company trying to get out from liability based on a very small technicality. It's four very glaring violations that violate HUD regulations, Section 8 housing and local regulations. So these were glaring defects that gave rise to the denial here in this case, and this is done after. So does the policy make a distinction based upon more serious violations, as opposed to something very minor? The policy itself doesn't make any distinctions between minor violations or major violations, but what it does provide is for a lack of coverage for health and safety code violations, like I said, HUD laws, ordinances, and statutes, federal, state, or local Section 8 programs, those kinds of violations, and those are not enumerated trivial violations. Again, those bodies provide for very serious regulations meant to ensure the safety of the tenants, especially in the Section 8 housing, where they're being offered government assistance, and at the same time, protection from the landlords. And so those are all things that we're looking at, not a trivial if theirs are broken or anything like that. Okay. That answers my question. I think there might have been another question. Can I ask a question on that? If the fire was caused by the stove, and we don't know, I guess, and let's say the lack of having a second floor exit contributed to the injury, but didn't cause the fire, would that be enough to deny coverage? Based on the policy, yes, because the policy, again, enumerates it as a violation of one of these many enumerated statutes. But it's not just a violation, right? Doesn't the bodily injury have to arise out of the violation or result from the violation? Yes, and absolutely, it did here, because if there had been the ability to exit the second floor from a window, or an alternate means of exit besides the stairs, or even regulation of the amount of people in the building, or again, the smoke detector, any of those four things, there would have been a mitigation of these damages. People would have been able to escape from the second floor. It was the three individuals, unfortunately, who passed on the second floor. And that is the violation itself is the direct cause of their damages. This is Judge Clay. Isn't it a disputed matter as to whether the violations contributed to the cause of the loss here? For example, there are nine or ten people there, but we don't know really within a certainty as to whether that had anything to do with the with the cause of the congregation or the losses that were incurred with the stove. Might speculate as to that, but we really don't know that for certain. So I guess you're saying if the violations of policy or regulation, if that occurs, you don't have to relate that to the cause of the fire. And there's no coverage if there's a violation, notwithstanding the violations might not be related to the causation with respect to the fire. Is that right? Your Honor, I think, yes, if I understand what you're saying is that we don't necessarily look to the cause of the fire to be the cause of the damages here. The code violations are the causes of the damages and the fire itself is sort of separate. That was not addressed, you're correct, at the lower court level. That would have been addressed in the state court proceedings, but that was all decided via the entry of the consent judgment, which is also a violation of the terms of the policy. Let me ask you this. Do we even know for certain if the fire was caused as a result of faulty maintenance of the stove or whether the stove itself was defective? Do we even know the answer to that? My understanding based on the pre-litigation investigation, which again, unfortunately, was not a part of the lower court record, is that there was an investigation and that it was not a defect in the manufacture of the stove, but in the maintenance of the stove. That is my understanding. An investigation by whom? If it was by the insurance company, that might be illuminating, but the insurance company certainly has an interest in how the investigation might turn out. Was there any investigation by the fire department or somebody unrelated to the parties? Yes, there was. The other counsel can correct me if I'm incorrect here, but my understanding is that that conclusion was made by the local fire department and not by an individual hired by either party. What did the fire department conclude? I'm sorry? What did the fire department conclude? Was there a report rendered? There was a report rendered. Again, my apologies, it was not part of the lower court record because we didn't believe that that was going to be a major issue in the determination of the policy language, but they determined what I had just mentioned was that the fire was caused by a defect in the maintenance of the stove, not the stove itself. Okay. Your Honor, she has exhausted her time as well. Yeah. Would you like to take a minute? We'll give the opposing counsel an extra minute to address the assumption of liability clause. Are you satisfied with the presentation you've made so far? I am satisfied with the presentation made so far. I'll reserve the rest of my arguments for rebuttal. Okay, that's fine. Thank you. May it please the court, Mark Bendure on behalf of Apple Lease. There's no question that there is a duty to defend. It's laid out in the insurance policy itself, and part of that duty to defend under the Michigan case law includes the obligation to investigate and to make a determination whether or not they fall within the coverage. The important thing for present purposes is the complaint because minimally they have to compare the complaint with the insurance policy. In this particular case, the complaint alleges that the cause of the injuries was the insurance policy requirements. Taking it a step further, it's true that there was not a detailed trial. There was a consent judgment. If the insurer wanted there to be a trial, they had to defend. But under the case law that we cited, if it fails to defend in breach of the then it is responsible for the consequences of the insured having to defend for itself. And that's essentially where we come down on this case. That's why there's a duty to defend so that an insurer cannot come in later, forgo an opportunity to have the case litigated, and then say if we litigated it, we would have been able to show something. The time to fish or cut bait is when the request is made for them to defend. Going on to the question of causation, again, the causation is that which is alleged in the complaint. The duty to defend is even broader, but it minimally covers the claims that are within the scope of the complaint. And to the extent the insurer is claiming some special interpretation, bear in mind that, first of all, exclusionary clauses are strictly construed against the insurer. And likewise, ambiguities or questions about the insurance coverage are likewise construed against the insurer. It bears mention, I guess, that counsel says that it was the landlord's fault. Well, bear in mind that is the tortfeasor whose liability they insured. The whole argument, particularly with the habitability, seems to be that we will insure you for negligence unless you're found to be negligent. We will insure you for liability for maintaining unsafe premises unless you fail to maintain unsafe premises. So their construction, it seems to me, creates illusory coverage because, let's face it, the minimally say you have to maintain safe premises. And so if you are excluding liability for failure to maintain safe premises, then you're providing coverage which is itself negatory. One second, sir. One second. Marshall, did we lose someone? We did. We lost Marshall. Yes, it was someone for the next case, Fedenski. Okay. Chief Judge Cole, do you want us to try to get him back on the line now or wait till the end of this argument to do that? We can wait till the end of this argument. Okay. I'll have someone from the office call and let him know. Thank you. Okay. And we shouldn't charge the counsel here for the time. We've just got a minute or so that we've... Okay. Yeah. I've got it paused. Okay. So apart from everything else, under the assumption of liability exclusion, I think we've shown pretty convincingly that under Michigan and national law, that only applies to liability that would not otherwise arise. In subsection two, specifically says the exclusion doesn't apply to liability for damages that the insured would have been in the absence of the contractor. And in this case, it arises from the common law duties which are imposed upon the landlord only apart from any specific writing. That exclusion only applies when you take on somebody else's liability. The reason for that is pretty clear. Let's say that my brother has a liability. Take an auto situation. He's at fault at auto. And I say, don't worry, brother. I will take care of that. And now I turn to my insurance company and say, now I'm liable because by contract, I assume someone else's liability. That's the sort of situation that that exclusion is meant to address, not something like this. And when we get to the habitability clause, bearing in mind, again, that all of this is construed against the insurer and the duty to defend applies whether or not this ultimately provides an exclusion. And the duty to defend is the first breach. But it goes on to say it applies to damages or expenses due to personal injury arising out of or resulting from the alleged or actual violation. There are no alleged violations of any habitability code. The allegations are that the landlord, the insured, knew of the defects with the stove and didn't fix it. And that the stove was the cause of the injury. And again, I think it ultimately boils down to the fact that at this stage of proceedings, it was incumbent upon the insurer to provide a defense. And once it made the decision not to provide a defense with a that, they threw down the gauntlet and said, we're not going to defend you at all. And that itself is the first and foremost breach of the contract and also triggers the case law from this court as well as the Michigan State courts that an insurer who the consequences if the insured who's wrongfully forced to defend for itself makes a fair and reasonable settlement. And in this particular case in the state court, the statewide judge made a specific finding that this was a fair and reasonable settlement. And the insurer was given every opportunity and invitation in the world to know what was going on. It was invited to participate in settlement discussions. It was made known that the settlement discussions and consent judgment were about to be entered. And it is responsible for the outgrowth, specifically with that finding of fair and reasonableness that the trial judge in the Michigan Circuit Court case made. I'll be glad to answer any other questions the court may have, but I think that sums up our argument. Okay. Thank you, Counselor. It doesn't appear that there are any more questions. We appreciate the argument. We'll hear a rebuttal from Ms. Katz. Thank you, Your Honor. I would just briefly address the provision regarding the duty to just note that the contract itself is not illusory. It's clear that the property must be safe and habitable and must comply with these statutes in order for it to be insured. If the property had been in compliance, then the damages would have been much more limited. The fire shorting out of the state... Did anybody from the insurance company inspect the premises before writing the policy? My understanding is that they did not. In the lower court, I was incorrect when I did mention that on the record, and I have since been corrected, that they did not inspect the property prior to writing the policy. However, they relied on the assertions made by the landlord that this property was safe and was habitable and was in compliance with all of the codes, including Section 8 codes, that it needed to be insured. And the policy has a provision indicating that Hamilton specifically relies on those representations in issuing the policy, and by accepting the policy, the landlord understands that those are the terms. And as far as the assumption of liability, again, the policy provides very clearly, quote, that Hamilton shall not have any duty to defend any claim proceeding or suit arising out of, resulting from, or in any manner related to those habitability code violations, including but not limited to diminished value of the property, physical or emotional injuries. And those are terms directly out of the policy advising the landlord that if the house is not in compliance, that this coverage will not exist, even for something like this incident. As to the consent judgment, our position is clear in our brief, as well, that the consent judgment was improper. It's a breach of the policy. We have no duty to defend or be bound by such an order. I mean, they told you that they were going to settle the case. I mean, didn't they inform the company that these discussions were going on, you were invited to participate? I mean, you weren't blindsided by it, right? That's correct. We were not blindsided by it. We did appear at the hearing where the judgment was entered. We filed written objections, objecting to its entry, objecting to its terms, objecting to the incorrectly calculated value of the policy for one incident. It's an aggregate of $1 million as opposed to $3 million. And so, no, we were not blindsided by it. But again, it's not, we did not give our permission. It was expressed in the policy that the insured cannot assume any obligations or incur any expenses and expect Hamilton to pay those without Hamilton's consent. And so, for those reasons, and the reasons stated in my original argument, Hamilton respectfully asked this court to reverse the district court's decision because of that unambiguous policy language and the landlord's breach of the contract by way of the consent judgment. Okay. Well, thank you very much for your argument this afternoon, Ms. Katz. And thank you, Mr. Bendure, as well, for your argument. We will submit the case for decision and have a written decision for you in due course.